UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                           Case No. 14-CR-0011 (PJS/TNL)

                    Plaintiff,

v.                                                                       ORDER

TEARISE BREON BAUGH,

                    Defendant.

Manda M. Sertich, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

James E. Ostgard, for defendant.

Defendant Tearise Breon Baugh is serving a 120-month sentence after pleading

guilty to one count of armed bank robbery and one count of brandishing a firearm

during and in relation to a crime of violence.  This matter is before the Court on Baugh's

motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).  For the reasons

that follow, Baugh's motion is denied.

Under § 3582(c)(1)(A)(i), a court may reduce a defendant's term of imprisonment

if, "after considering the factors set forth in section 3553(a) to the extent that they are

applicable," the court finds that "extraordinary and compelling reasons warrant such a

reduction[.]"[1]  According to a policy statement issued by the United States Sentencing

_____

[1]A defendant may move for a sentence reduction only "[1] after the defendant
has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons
to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt

Commission, the court must also find that "the defendant is not a danger to the safety of any other person or to the community" and that "the reduction is consistent with this policy statement."  U.S.S.G. § 1B1.13.

The application notes list several examples of extraordinary and compelling reasons that justify a sentence reduction, including "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  *Id.* § 1B1.13, cmt. n.1(A)(ii).  The policy statement also includes a catch-all provision for cases in which "there exists . . . an extraordinary and compelling reason other than, or in combination with," the reasons specifically described by the policy statement.  *Id.* § 1B1.13, cmt. n.1(D); *see United States v. Warren*, 456 F. Supp. 3d 1083, 1085–86 (D. Minn. 2020) (applying § 1B1.13 to compassionate-release motions under the First Step Act, but declining to apply the outdated provision

---

of such a request by the warden of the defendant's facility, whichever is earlier . . . ."
18 U.S.C. § 3582(c)(1)(A).  Baugh asserts that he submitted an administrative request to the warden of USP Terre Haute, where Baugh was previously incarcerated, and received a denial on June 17, 2020.  ECF No. 60 at 8 & n.2.  Baugh's former counsel submitted a second administrative request to the wardens of both FCI Milan and USP Terre Haute on September 17, 2020.  ECF No. 60-1.  The government does not contest, and the Court finds, that Baugh has exhausted his administrative remedies as required by § 3582(c)(1)(A).

requiring that the Director of the Bureau of Prisons make the determination that the catch-all provision applies).[2]

Baugh argues that he suffers from a number of health conditions that, in combination with the current coronavirus pandemic, constitute "extraordinary and compelling reasons" to reduce his sentence.  These conditions include pericarditis, asthma, (possibly) lupus, and various mental-health problems.

Pericarditis refers to inflamation of the pericardium (the tissue that surrounds the heart).[3]  Baugh's medical records indicate that he was first diagnosed with pericarditis in November 2018 and has suffered intermittent chest pain since that time.  *See* ECF No. 60-2 at 4–8; ECF No. 63-1 at 2, 43, 58; ECF No. 63-2 at 10–11, 14–16, 43.  The Centers for Disease Control and Prevention ("CDC") has noted that some heart conditions, such as heart failure and coronary artery disease, put a person at an

---

[2]Both parties agree that the policy statement applies to compassionate-release motions filed by the Bureau of Prisons ("BOP") as well as to motions filed by defendants.  *See* ECF No. 65 at 10–11 & n.1; ECF No. 60 at 7–8.  The parties disagree as to whether the catch-all provision of application note 1(D) applies only to determinations made by the director of the BOP, or whether this provision also applies to determinations made by the Court.  For the reasons described in *Warren*, 456 F. Supp. 3d at 1085–86, the Court agrees with Baugh that it is free to determine whether extraordinary and compelling reasons exist apart from those listed in § 1B1.13, cmt. n.1(A)–(C).

[3]American Heart Association, *What is Pericarditis?*, https://www.heart.org/en/health-topics/pericarditis/what-is-pericarditis (last visited Nov. 24, 2020).

increased risk of severe complications from the virus that causes COVID-19.[4]  However, pericarditis is not among the risk-enhancing heart conditions identified by the CDC. Further, it appears that Baugh's pericarditis is being adequately monitored by Bureau of Prisons ("BOP") Health Services.  *See* ECF No. 60-2 at 33, 57; ECF No. 63-1 at 45–46.

Baugh also suffers from asthma and was recently prescribed a second inhaler to help manage his condition.  *See* Presentence Report ("PSR") ¶ 54; ECF No. 63-1 at 6, 13–14, 29, 69–70.  Baugh explains that his mometasone inhaler suppresses his immune system, leaving him vulnerable to infection.  Current guidance from the CDC states that people with moderate to severe asthma and people who use immune-suppressing medicines might be at increased risk for severe illness from the virus that causes COVID-19.[5]  It appears, however, that Baugh's asthma is mild and well-controlled, and Baugh is receiving appropriate care at FCI Milan, where he is currently incarcerated.

Lupus is an autoimmune disease and, according to the Lupus Research Alliance, people with lupus are at an increased risk of contracting COVID-19 both because of the

---

[4]Ctrs. for Disease Control and Prevention, *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions* (Nov. 2, 2020) http://cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[5]Ctrs. For Disease Control and Prevention, *supra* note 4.

condition itself and because of the medications used to treat the condition.[6]  But Baugh

has not been diagnosed with lupus, and thus he is not taking any medication to treat the

disease; instead, he is merely undergoing testing.  *See* ECF No. 60-2 at 2.

Finally, although Baugh suffers from significant mental illness, the Court cannot

find that his mental illness increases his risk of either contracting COVID-19 or suffering

severe consequences if he does become infected.  *See* PSR ¶¶ 55–57; ECF No. 60-2 at

111–13; ECF No. 63-1 at 44.  For these reasons, the Court finds that Baugh's medical

conditions do not rise to the level of "extraordinary and compelling reasons" justifying

his release.

The Court also notes that the coronavirus pandemic appears to be well-

controlled at FCI Milan, with no current cases among inmates and only three current

cases among staff.[7]  Baugh's medical records suggest that his various conditions are

being closely monitored and adequately treated by BOP Health Services.  Meanwhile,

the coronavirus pandemic appears to be close to raging out of control in Minnesota,

where Baugh plans to live after he is released from prison.  ECF No. 53.  It is of course

true that certain preventative measures (for example, social distancing and avoiding

---

[6]Lupus Research Alliance, *COVID-19 Frequently Asked Questions: What You Should Know* (Apr. 3, 2020), https://www.lupusresearch.org/covid-19-frequently-asked-questions/.

[7]Federal Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/index.jsp (last visited Nov. 24, 2020).

large gatherings) are difficult or impossible in the prison environment, but it may not be farfetched to suggest that, at least at the moment, Baugh might have as much chance of contracting COVID-19 in the Twin Cities as he does at FCI Milan.  *See* ECF No. 64 at 25.

Even if Baugh had established extraordinary and compelling reasons warranting a reduction in his sentence, the Court would nevertheless deny his motion because of the danger he poses to the public.  *See* U.S.S.G. § 1B1.13(2).  Baugh is in prison for an extremely serious crime.[8]  In December 2013, Baugh and two other men walked into a bank in Blaine, Minnesota and ordered everyone to the ground.  PSR ¶ 6.  Baugh brandished a loaded .40 caliber pistol, which he pointed at the heads and bodies of bank tellers and one bank customer.  PSR ¶¶ 6, 9.  He and one of his coconspirators jumped over the counter and began removing cash from the cash drawers, stealing about $6,000. PSR ¶¶ 6, 11.  The other of Baugh's coconspirators used zip ties to bind the hands of the bank manager behind his back, and did the same to a bank customer.  Baugh explained that he participated in the crime because the mother of his child had "lost some drugs" that she was supposed to distribute on behalf of her suppliers, the suppliers told her

---

[8]The Court acknowledges that Baugh was just 23 years old at the time of his offense, and he did not have a particularly serious criminal record up to that point. Baugh had one prior felony conviction for fifth-degree possession of drugs, as well as one juvenile adjudication for felony theft.  PSR ¶¶ 33, 38.  Baugh also had misdemeanor convictions for carrying a weapon without a permit, underage drinking, driving after revocation, and driving without proof of insurance.  PSR ¶¶ 35–37, 39.

that she was responsible for paying for the lost drugs, and Baugh was hoping to steal enough money to pay off her drug debt. *See* PSR ¶¶ 14–15.

Baugh eventually pleaded guilty to both counts of a two-count indictment and, on August 8, 2014, was sentenced to 36 months' imprisonment for armed bank robbery, and to the mandatory-minimum 84 months' imprisonment for brandishing a firearm during and in relation to a crime of violence, both terms to run consecutively for a total of 120 months. ECF No. 45. Baugh's projected release date is August 10, 2022. ECF No. 53. Given the brutality of his crime—using a loaded gun to terrorize innocent people in a public place—and given his callous disregard for the lives and safety of others, the Court cannot find that Baugh would not pose a threat to any other person or to the community if released.

The Court also finds that the § 3553(a) factors weigh against granting Baugh's motion for release. At the time of sentencing, the Court varied slightly downward from Baugh's Guidelines range at the government's urging to account for Baugh's difficult upbringing and mental health problems. *See* ECF Nos. 41, 46. A further reduction in Baugh's sentence would fail to reflect the seriousness of Baugh's offense, provide just punishment for that offense, provide adequate specific or general deterrence, or protect the public from further crimes.

For these reasons, the Court denies Baugh's motion for a reduction in his sentence.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendant's motion for release [ECF No. 57] is DENIED.

Dated:  November 25, 2020         s/Patrick J. Schiltz
                                                   Patrick J. Schiltz
                                                   United States District Judge